UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRANK A. PUGLIESE,                     :
                                       :CIVIL ACTION NO. 3:11-CV-827
            Plaintiff,                 :
                                       :(JUDGE CONABOY)
            v.                         :
                                       :
ADULT SERVICES UNLIMITED, INC.,        :
t/a RIVERSIDE REHABILITATION,          :
                                       :
            Defendant.                 :
                                       :
_____

## MEMORANDUM

Here we consider the Motion for Summary Judgment (Doc. 21) filed by Defendant seeking judgment in its favor on all claims raised in Plaintiff's Complaint (Doc. 1).  In the underlying action, Plaintiff claims he was discriminated against based on his gender and age when he was terminated from his position at Defendant's facility in Plains, Pennsylvania.  (*See* Doc. 1.)  For the reasons discussed below, we conclude summary judgement is warranted and grant Defendant's motion.

## I. Background[1]

### A.   *Factual Background*

Defendant Adult Services Unlimited ("ASU" "Defendant") is a subsidiary of Extended Health Services, Inc., ("Extendicare").

---

[1]   Citations are primarily to Defendant's Statement of Undisputed Material Facts (Doc. 24).  Unless otherwise noted, in Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (Doc. 27), Plaintiff either admits the asserted fact or states he is without sufficient knowledge or information to respond.

(Statement of Undisputed Material Facts, Doc. 24 ¶ 1.)  ASU operates twenty rehabilitation centers in Pennsylvania which are long-term care facilities providing physical and occupational therapy.  (*Id.*)

Plaintiff began working for Defendant's predecessor company in 1993 as an administrator.  (Doc. 24 ¶ 2.)  He was responsible for seven facilities and about fifty employees.  (Doc. 24 ¶ 4.)  For a period of two to three years, until June 2008, Plaintiff reported to David Mahaffey who was a vice-president.  (Doc. 24 ¶ 5.) Plaintiff and Mahaffey (a male age 58) had a good relationship and were friends as well as colleagues.  (Doc. 24 ¶ 6.)

After revenues dipped in 2005 and 2006, Mahaffey sent Plaintiff an e-mail on May 19, 2006, discussing revenues and alternate plans.  (Doc. 24 ¶ 8.)  Sometime thereafter, when ASU continued to financially underperform, Mahaffey asked Plaintiff to prepare a report addressing the reasons for the problem.  (Doc. 24 ¶ 9.)  Plaintiff identified reoccurring personnel issues, employee turnover, employee morale, marketing, compliance and quality of care.  (Doc. 24 ¶ 10.)

Prior to separating from Extendicare on June 29, 2008, Mahaffey prepared a Transition Summary in which he addressed the financial underperformance and personnel issues as well as Plaintiff's management style.  (Doc. 24 ¶¶ 12-16.)  Mahaffey noted that Plaintiff had an "insufficient grasp of the factors

influencing his business," stated that "Frank is a friend of mine, but I don't feel he is the person for the job," and recommended that ASU consider a change in leadership. (Doc. 24 ¶¶ 16-18.) Plaintiff did not see the Transition Summary but testified he knew Mahaffey was not happy with him for a number of reasons. (Doc. 24 ¶ 19.)

In August 2008, Julie Skurek replaced Mahaffey and became Plaintiff's direct supervisor. (Doc. 24 ¶ 21.) Skurek, a fifty year old female, had eight directors (five women and three men) reporting to her, including Plaintiff. (Doc. 24 ¶ 22.) After her promotion, Skurek visited all the directors reporting to her. (Doc. 24 ¶ 25.) Skurek visited Plaintiff in August 2008. (Doc. 24 ¶ 26.) Defendant states the purpose of the visit was to work on the budget (Doc. 24 ¶ 28); Plaintiff states the purpose of the visit was to review his business performance (Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, Doc. 27 ¶ 28). Skurek reported that during her visit she saw many "red flags" with Plaintiff's facilities, including excessive expenditures, decreasing revenues and financial irregularites. (Doc. 24 ¶ 29.) She informed Plaintiff about these issues. (Doc. 24 ¶ 30.) Defendant asserts that a heated exchange ensued (Doc. 24 ¶ 30); Plaintiff states he told Skurek he would have to work on developing a new budget (Doc. 27 ¶ 30).

Following her visit to Plaintiff's facilities in Pennsylvania,

Skurek reported to her supervisor, Sharon Gawronski, about her issues of concern.  (Doc. 24 ¶ 31.)  Gawronski, who at the time was ASU's Vice President of Rehabilitation, decided to initiate an audit of Plaintiff's facilities and asked Tim Detary, ASU's Vice President of Human Resources, to join her in visiting Plaintiff. (Doc. 24 ¶¶ 32-34.)  The visit took place on September 10, 2008. (Doc. 24 ¶ 35.)  Defendant asserts Gawronski and Detary told Plaintiff the reason for the visit was there had been allegations of financial impropriety and employee complaints (Doc. 24 ¶ 36); Plaintiff states that he was not told this (Doc. 27 ¶ 36). Pursuant to company policy, Plaintiff was suspended pending the outcome of the investigation.  (Doc. 24 ¶ 36.)

After the suspension, Gawronski and Detary visited with employees who had complaints about Plaintiff.  (Doc. 24 ¶ 36.) Detary investigated several issues, including a "slush fund" which Detary believed to be problematic.  (Doc. 24 ¶¶ 39-40.)  Detary then contacted ASU's Director of Internal Audit, Dylan Mann, who arrived the following day.  (Doc. 24 ¶¶ 40-41.)  Mann conducted an internal audit which revealed a number of violations of company policy, including the above-mentioned "slush fund," directing employees to override company policies including purchasing alcohol as part of marketing efforts, travel expense issues, directing sheriff sales of property of patients who could not pay their bills without keeping records, and improper award of a cleaning contract.

4

(Doc. 24 ¶¶ 42-43, 45-47.)  The investigators reviewed both of Plaintiff's computers and found pornography on one of them.  (Doc. 24 ¶ 48.)  Additional pornographic material was found in the bathroom adjacent to Plaintiff's office.  (Doc. 24 ¶ 49.) Plaintiff admits he maintained pornography on the company computer, viewed pornography on the computer in his office and e-mailed pornography from the computer.  (Doc. 24 ¶¶ 50-51.)  Plaintiff asserts this was done on his own personal AOL account and external storage drives during his personal time and not on company time using a corporate account.  (Doc. 27 ¶¶ 50-51.)

The investigators put together an audit report which summarized their findings.  (Doc. 24 ¶ 52.)  Plaintiff disagrees with some of the findings, but he does admit an impropriety regarding a check written to himself dated February 5, 2007.  (Doc. 24 ¶¶ 53-54.)  The decision to discharge Plaintiff was made by Detary and Gawronski based on the findings of the audit.  (Doc. 24 ¶ 55.)  Detary was aware of the Transition Summary in which Mahaffey recommended Plaintiff's discharge.  (Doc. 24 ¶ 58.) Skurek did not make the decision to terminate Plaintiff.  (Doc. 24 ¶ 56.)  Detary informed Plaintiff of his discharge by phone and followed up with a termination letter sent on September 16, 2008. (Doc. 24 ¶¶ 57, 59.)

Skurek hired Melissa McLaughlin, a forty-five year old female, as Plaintiff's replacement in May 2009.  (Doc. 24 ¶ 60.)  Of the

thirty employees in similar positions to Plaintiff's, twenty are more than forty years of age and nine are older than Plaintiff. (Doc. 24 ¶ 65.)  Almost half of the similarly-situated employees are male.  (Doc. 24 ¶ 65.)  The decision maker in this case, Detary, is older than Plaintiff.  (Doc. 24 ¶ 66.)

Plaintiff attributes certain comments to Skurek, including that she held weekly conference calls from which Plaintiff was excluded, referring to them as a "chick thing," she said Plaintiff was Mahaffey's "fair-haired boy," and, upon learning Plaintiff's age during a dinner conversation, she commented "oh, I didn't know you were that old."  (Doc. 24 ¶¶ 61, 63-64.)  Plaintiff denies Defendant's statement that Skurek had a number of conference calls in which Plaintiff and other executive directors participated. (Doc. 24 ¶ 62; Doc. 27 ¶ 62.)

**B.   *Procedural Background***

Plaintiff filed the underlying Complaint on May 2, 2011. (Doc. 1.)  The Complaint contains three counts: Count I for Gender Discrimination under Title VII; Count II for Age Discrimination under the Age Discrimination in Employment Act ("ADEA"); and Count III for violations of the Pennsylvania Human Relations Act based on both age and gender discrimination.  (Doc. 1.)

The case was assigned to the Court's Mandatory Mediation Program.  (Doc. 11.)  A mediation was held by Richard M. Goldberg, Esquire, on December 9, 2011, who filed his Mediation Report on

December 16, 2011, indicating settlement was not reached.  (Doc. 18.)

Defendant filed its Motion for Summary Judgment (Doc. 21) on March 29, 2012.  The Motion was accompanied by the Brief in Support of Defendant's Motion for Summary Judgment (Doc. 22), Appendix in Support of Defendant's Motion for Summary Judgment (Doc. 23), and Statement of Undisputed Material Facts (Doc. 24).  Plaintiff filed Plaintiff's Responsive Brief in Opposition to Defendant's Motion for Summary Judgment (Doc. 26) on April 12, 2012, accompanied by Plaintiff's Response to Defendant's Statements of Undisputed Material Facts (Doc. 27).  Defendant filed its Reply Brief in Support of Defendant's Motion for Summary Judgment (Doc. 28) on April 23, 2012.

At the request of the parties, a settlement conference was scheduled for April 26, 2012.  (Doc. 25.)  This conference was continued (Doc. 29), and was held on May 23, 2012 (Doc. 34).  Settlement was not reached and, therefore, Defendant's fully briefed summary judgment motion is under consideration here.

## II. Discussion

**A.    *Summary Judgment Standard***

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." *See Knabe v. Boury*, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (*citing* Fed. R. Civ. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (*citing Anderson*, 477 U.S. at 248).  In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact.  The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Celotex*, 477 U.S. at 325.  The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by

Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

**B.    *Defendant's Motion***

Defendant argues it is entitled to summary judgment on all claims because Plaintiff cannot refute that Defendant terminated him for legitimate non-discriminatory reasons and he cannot establish that the reasons cited by Defendant for his termination are pretexutal and that age was the "but for" reason for his determination or that Plaintiff's gender was more likely than not the true reason. (Doc. 21 ¶ 2.) For the reasons discussed below, we agree.

Plaintiff's federal age and gender discrimination claims are subject to a similar analysis, *see*, *e.g.*, *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003), and his PHRA claims are reviewed in the same way as the federal statutes, *see*, *e.g.*, *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).  The burden shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to all of Plaintiff's discrimination claims.  *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000). Under this framework, a plaintiff must first produce sufficient evidence to convince a reasonable factfinder as to all the elements of a prima facie case.  *Sarullo*, 352 F.3d at 789.  While the prima facie elements of a claim vary depending on the nature of the discrimination alleged, *see*, *e.g.*, *Showalter v. Univ. of Pittsburgh Medical Center*, 190 F.3d 231, 234-35 (3d Cir. 1999), here Defendant concedes for purposes of this motion that Plaintiff has established a prima facie case (Doc. 22 at 9 n.2) so we need not review the differences between the age and gender discrimination prima facie elements.[2]

---

[2]  *Sarullo* noted "[t]he requirements for a prima facie case of Title VII race discrimination and age discrimination under the ADEA are substantially the same. *See Stanziale*, 200 F.3d at 105.  The only real distinction is that for age discrimination, an individual is a member of a protected class if he is forty years of age or older.  *See* 29 U.S.C. § 631." 352 F.3d at 797 n.6.  *Sarullo* also stated that the prima facie test "remains flexible and must be tailored to fit the specific context in which it is applied."  *Id.* at 798 (citing *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996)).

Once the plaintiff establishes his prima facie case, the burden of production (but not the burden of persuasion) shifts to the defendant, who must offer sufficient evidence that, if believed, would support a finding that the defendant had a legitimate, non-discriminatory reason for the adverse employment decision. *Showalter*, 190 F.3d at 235 (citation omitted). If the defendant meets this burden, the presumption of discriminatory action raised by the prima face case is rebutted. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255 (1981). The burden then shifts to the plaintiff who "must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." *Sarullo*, 352 F.3d at 797 (citing *Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 804). Title VII gender discrimination claims can be maintained with a showing that an improper consideration was a motivating factor for the employer's action. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 174 (2009). However, for an ADEA claim, "the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." *Id.* at 177.

A plaintiff can show pretext in two ways: by presenting evidence from which a reasonable factfinder could either disbelieve the employer's articulated reasons or believe that an invidious discriminatory reason was more likely than not a motivating or

determinative (but-for) cause of the employer's adverse action.
*Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citation
omitted).  In order to discredit an employer's proffered non-
discriminatory reason for the adverse action, *Fuentes* explained
what the plaintiff must show.

> To discredit the employer's proffered
> reason, . . . the plaintiff cannot simply
> show that the employer's decision was wrong
> or mistaken since the factual dispute at
> issue is whether discriminatory animus
> motivated the employer, not whether the
> employer is wise, shrewd, prudent, or
> competent.  Rather, the non-moving plaintiff
> must demonstrate such weaknesses,
> implausibilities, inconsistencies,
> incoherencies, or contradictions in the
> employer's proffered legitimate reasons for
> its action that a reasonable factfinder could
> rationally find them unworthy of credence,
> and hence infer that the employer did not act
> for the asserted non-discriminatory reasons.

*Fuentes*, 32 F.3d at 765 (internal citations and quotations
omitted).

     As noted above, for purposes of this motion, Defendant does
not argue that Plaintiff cannot make out a prima facie case for his
claims.  Rather, Defendant maintains Plaintiff was terminated for
legitimate, non-discriminatory reasons.  (Doc. 22 at 11.)
Defendant cites numerous performance deficiencies as the reason for
its decision to terminate Plaintiff.  In a report dated June 2008
prepared by David Mahaffey, Plaintiff's supervisor at the time,
noted deficiencies included the following: significant personnel
turnover; financial under-performance; poor management style;

reluctance to make effective adjustments to restore operating margin; and insufficient grasp of factor's influencing Defendant's business.  (*Id.* at 13.)  When Julie Skurek replaced Mahaffey and became Plaintiff's direct supervisor in August 2008, Defendant asserts that she found "excessive expenses for promotional activities, public relations, marketing, meals, alcohol, travel and auto."  (Doc. 22 at 14.)  Following Skurek's report on these matters, Defendant conducted an internal audit in September 2008. The audit revealed the following violations of company policy:

> maintaining a secret cash fund; instructing employees to violate various Company policies; failing to keep records of asset disposition arising from sheriff's sales; using the ASU checking account to pay for items and activities that should have been submitted through expense reports; creating a conflict of interest by entering into a cleaning contract with an Extendicare employee; and using a Company-owned computer to download pornographic images and files.

(Doc. 22 at 15.)  Defendant also determined that Plaintiff's computer and hard drive were "filled with pornography" and found pornographic compact discs and videos in a private bathroom adjacent to Plaintiff's office.  (*Id.*)

Plaintiff first responds that Defendant's proffered reasons are not legitimate and are "clearly unworthy of credence."  (Doc. 26 at 7.)  He offers an explanation for each claimed violation. (Doc. 26 at 8-9.)

First, Plaintiff states that the record shows Detary was aware

13

of journal entries and receipts for the cash fund and, rather than being secret, it was a petty cash fund maintained to pay expenses quickly instead of waiting for them to be paid by Corporate headquarters.  (Doc. 26 at 8.)  He cites as an example an occasion where the fund was used to pay the electric bill after service was turned off when a bill was not promptly paid by headquarters. (*Id.*)

Plaintiff next avers that his instructing employees to violate company policies is not valid in that the alleged violation was determined at Detary's deposition to be a violation of the no alcohol policy which "was only in effect for a brief period of time when its terms were used against Pugliese."[3]  (Doc. 26 at 8.)

Plaintiff explains the allegation regarding sheriff's sales records relates only to a missing television and there was no testimony that Plaintiff took it.  (Doc. 26 at 8-9.)

Plaintiff asserts that, at his deposition, Detary testified that he did not personally know of the violation concerning the use of the ASU checking account to pay for items and activities that should have been submitted through expense reports.  (Doc. 26 at 9.)

Regarding his use of a cleaning service owned by an employee, Plaintiff asserts that Detary testified that a service was

---

[3]  The policy apparently had to do with not buying alcohol for physicians when entertaining them.  (*See* Doc. 26 at 8.)

performed and paid for and Detary did not identify how company policy was being violated.  (Doc. 26 at 9.)

Plaintiff maintains that although he has admitted to viewing pornographic images, it was done on his own personal AOL account and with the use of external storage drives on his personal time.  (Doc. 26 at 9.)  Plaintiff asserts that this did not violate any company policy.  (*Id.*)

After reviewing each of Defendant's proffered reasons, Plaintiff posits that because he provides an explanation for each, they were not legitimate reasons for discharging him.  (Doc. 26 at 9.)  Plaintiff further maintains that evidence of pretext is apparent because Defendant violated its own progressive disciplinary policy.  (Doc. 26 at 9.)  In support of this assertion, Plaintiff points to the facts that he was not given any warnings prior to being terminated and he was not given a chance to explain any of the alleged violations.  (*Id.* at 10.)  Finally, Plaintiff finds proof that Defendant's reasons were a pretext for unlawful discrimination in the sworn statements of Joseph Compagnino and Joseph Picante who "heard Ms. Skurek make unlawful discriminatory comments" about Plaintiff, and Thomas Cook who was present in Plaintiff's office when Plaintiff reported the allegedly discriminatory comments to Stanley Kremski, the Director of Human Resources for the Plains facility.  (Doc. 26 at 11, 13.)

Defendant replies that Plaintiff is essentially asking the

15

Court "to act as an after-the-fact, super-personnel department to
review and anaylze ASU's assessment of Pugliese's performance and
determine whether his performance was 'bad' enough to justify the
termination." (Doc. 28 at 4.) Citing *Money v. Provident Mutual
Life Ins. Co.*, 189 F. App'x 114, 116 (3d Cir. 2006), Defendant
asserts that this is not a proper role for the district court.
(Doc. 28 at 4.) Defendant also maintains that Plaintiff's argument
regarding warnings is without merit in that Plaintiff testified
that Mahaffey made him aware of his performance deficiencies, and
it is also well-settled that companies have no obligation to warn
employees of performance issues. (Doc. 28 at 4 (citing *Healy v.
N.Y. Life Ins. Co.*, 860 F.2d 1209, 1216 (3d Cir. 1988)). In reply
to Plaintiff's reliance upon the alleged statements and actions of
Skurek, Defendant maintains they "are simply stray remarks which
are not probative of discrimination." (Doc. 28 at 5 (citing *Ryder
v. Westinghouse Elec. Corp.*, 128 F.3d 128, 133 (3d Cir. 1997)).)
Defendant further asserts that these remarks are not relevant
because Skurek did not play any role in the decision to terminate
Plaintiff. (Doc. 28 at 5.)

Here the evidence shows that Plaintiff's newly-appointed
immediate supervisor Julie Skurek visited Plaintiff's facilities as
part of a visit from Wisconsin to meet with directors who reported
to her. (Doc. 24 ¶¶ 25, 26.) Regarding Plaintiff's facilities,
Skurek saw "red flags" in the nature of "excessive expenditures she

16

did not see at other facilities," decreasing revenue and higher costs, and she brought these findings to her immediate supervisor, Vice President of Operations Sharon Gawronski.  (Doc. 23-3 at 11-14.)  Gawronski then made the decision to conduct an audit of Plaintiff's facilities and flew to Pennsylvania from Wisconsin with Timothy Detary, the Vice President of Human Resources, a few weeks after receiving Skurek's report.  (Doc. 23-2 at 5; Doc. 23-3 at 29-30.)  Together they went to Plaintiff's office on September 10, 2008, and told him that because of reports of some financial improprieties and employee complaints regarding human resources activity, they were going to conduct an investigation and, as per company policy, he would be suspended effective immediately and at least until the investigation was completed.  (Doc. 23-2 at 9-10.)

Eventually, Plaintiff was terminated on September 16, 2008, by Gawronski and Detary.  (Doc. 23-2 at 13.)  He was told the decision was a result of the investigation.  (Doc. 23-2 at 14.)  CPAs and internal auditors conducted much of the investigation and offered their opinions on the propriety of certain practices at Plaintiff's facilities.  (*See*, *e.g.*, Doc. 23-2 at 12, 20, 26.)

The record also shows that Plaintiff's long-term supervisor, David Mahaffey (who left Defendant's employ in May or June of 2008) in his Transition Summary dated June 29, 2008, stated about Plaintiff "Frank is a friend of mine, but I don't feel – I don't feel he is the person for the job at present."  (Doc. 23-1 at 27-

29; *see also* Doc. 23-2 at 5, 15).  Mahaffey added that Defendant should "consider a change in leadership" at Plaintiff's facilities. (Doc. 23-1 at 29.)

This record supports Defendant's assertion that Skurek visited Plaintiff's and other directors' facilities for purposes of budget review and not, as suggested by Plaintiff, to target him for a performance review.  The record also shows that the subsequent visit from Gawronski and Detary, and the investigation which followed were precipitated by Skurek's report of irregularities she found when she visited Plaintiff.

We conclude Plaintiff has not met his burden of presenting evidence from which a reasonable factfinder could conclude that the reasons proffered by Defendant for Plaintiff's termination are a pretext for discrimination.  While Plaintiff may have an explanation for company violations asserted in the investigation report, he does not dispute that an investigation was held, numerous violations were identified, and the decision-makers relied upon the investigation report.  Thus, at most, Plaintiff's refutation of the investigation report findings point to either mistakes or disputes as to the correctness of the findings-- Plaintiff has not demonstrated the implausibilities or inconsistencies necessary for a reasonable factfinder to conclude that Defendant's proffered reasons are unworthy of credence.  *See Fuentes*, 32 F.3d at 765.  This conclusion is bolstered by the fact

that the investigative findings were reviewed in the context where a report of record prepared in June 2008 by David Mahaffey, Plaintiff's long-term supervisor, contained the recommendation that Plaintiff be replaced and other performance issues had previously been noted by Mahaffey and discussed with Plaintiff.

Plaintiff's reliance on Defendant's failure to warn him or allow him to explain the investigative findings is not persuasive because his employer was under no obligation to do so. *See Healy*, 860 F.2d at 1216. The context in which Defendant decided to act upon the investigative findings without discussing them with Plaintiff, *i.e.*, Mahaffey's recommendation and previous performance issues, further supports the conclusion that no discriminatory animus can be inferred from Defendant's failure to warn Plaintiff.

Plaintiff's reliance upon actions and statements attributed to Skurek is unavailing because he has not come forward with any evidence that she played any role in the decision to terminate him--he points to no evidence that she was a decisionmaker or that the decisionmakers consulted her. Without this connection, even if Skurek made the remarks attributed to her by Plaintiff, they do not undermine the reasons for the decision proffered by Defendant for the termination.[4]

---

[4] If we were to assume *arguendo* that Skurek had some role in the decision to terminate Plaintiff, his proffered evidence would not be sufficient to overcome summary judgment because of the nature of the remarks and when they were made. "Stray remarks by decisionmakers unrelated to the decision process are rarely given

Importantly, our independent review of the record reveals nothing which would support Plaintiff's argument that the decision to terminate him was based upon his age or gender, that is, nothing in the record supports that discriminatory animus was the real reason for the termination decision.  *See Fuentes*, 32 F.3d at 765. We have found no evidence which undermines Defendant's proffered reasons for terminating Plaintiff.[5]  Reviewing all evidence in a

---

great weight, particularly if they were made temporally remote from the date of the decision." *Fuentes*, 32 F.3d at 767 (quoting *Ezold v. Wolf, Block, Schorr, & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992)).  The record shows that Plaintiff's evidence referencing Skurek's telephone meetings with women related to a time when David Mahaffey was the supervisor.  Joseph Vacante stated in his Affidavit that he was present during a phone conversation between Plaintiff and Skurek when she said "there were weekly telephone meetings she held with other female directors of the company.  It was a girls [sic] 'support group' and was just a 'chick thing' [] they used to cope with David Mahaffey and his ranting."  (Doc. 26-1 at 27.)  From this statement, we can infer that if the directors were dealing with "Mahaffey and his ranting" then Mahaffey was their supervisor and the conversation predated Plaintiff's termination by at least a few months.  The affidavit of Thomas Cook refers to the same conversation between Plaintiff and Skurek as being "recent" and, therefore, it most likely predated Plaintiff's termination by at least a few months.  (Doc. 26-1 at 33.)  Finally, the conversation supported by the Affidavit of Joseph Compagnino in which Plaintiff's age was mentioned also appears to be in the nature a stray remark which occurred remote in time to when the termination decision was made.  (*See* Doc. 26-1 at 28.)

[5]    This includes a review of the age and gender of similarly situated employees.  Of the thirty employees in similar positions to Plaintiff's, twenty are more than forty years of age and nine are older than Plaintiff.  (Doc. 24 ¶ 65.)  Almost half of the similarly-situated employees are male.  (Doc. 24 ¶ 65.)  Thus, the age and gender of those similarly situated to Plaintiff are not suggestive of discrimination.  Also worthy of note, a main decision maker in this case, Timothy Detary, is older than Plaintiff.  (Doc. 24 ¶ 66.)

light most favorable to Plaintiff, we do not find that a reasonable factfinder could conclude that Plaintiff would not have been terminated but for his age or that Defendant's decision to terminate him was motivated by his gender.  Thus, summary judgment in favor of Defendant on all claims is proper.

### III. Conclusion

For the reasons discussed above, Defendant's Motion for Summary Judgment (Doc. 21) is granted.  An appropriate Order accompanies this motion.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: June 6, 2012